UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD LAMONT MARTIN,<br><br>Defendant. | 5:19-CR-50167-KES-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant, Edward Lamont Martin, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Docket 643. The Federal Public Defender filed a notice of intent not to file a supplemental briefing on Martin's behalf. Martin filed a supplement to his motion. Docket 656. Plaintiff, the United States of America, opposes the motion. Docket 658. Martin filed a reply to the United States' response. Docket 662. For the following reasons, Martin's motion for compassionate release is denied.

## BACKGROUND

On July 28, 2021, Martin entered a plea of guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. *See* Dockets 368, 387. On October 15, 2021, the court sentenced Martin to 280 months in custody. Docket 462. Martin's projected release date is February 7, 2041. *See Find an Inmate,* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Mar. 20, 2024) (enter BOP register number 18392-273). Martin is incarcerated at the Federal Correctional Institution, Victorville (FCI Victorville Medium II). *See id.*; *FCI VICTORVILLE,*

Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/vvm/ (last accessed Mar. 20, 2024).

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). One narrow exception is the First Step Act (FSA), passed by Congress in 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. *Id.* Compassionate release allows defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must consider the § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect the FSA's empowerment of federal courts to adjudicate defendant-initiated motions for compassionate release. U.S.S.G. § 1B.13, amend. 814.

Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention. I*d.; 2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last accessed Mar. 20, 2024).

## I.   Administrative Exhaustion

Before the FSA's passage, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Martin emailed the warden of his facility on November 7, 2023, stating "sir,i sent you a copy-out requesting Compassionate Release base on my new medical diagnosis of Myasthenia Gravis disease..could you please answer my copy-out so i may show the courts that i have meet the filing for compassionate release requirements with the federal district court." Docket 656-1. The record does not reflect a response from the Warden. Docket 658 at pp. 1-2. The United States does not challenge Martin's "exhaust[ion of] his administrative remedies[.]" Docket 658 at 2. Because the United States does not challenge

3

Martin's administrative exhaustion, it has thus waived the argument. *See United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (characterizing 18 U.S.C. § 3582(c)(1)(A)'s procedural requirements as "mandatory claim-processing rule[s]" that "must be enforced so long as the opposing party properly raises it;" *see also United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) ("Not a jurisdictional limitation, § 3582(c)(1)(A)'s exhaustion requirement is a 'claim-processing rule[]' and accordingly 'may be waived or forfeited' by the government." (quotation omitted)). Because the government has not raised the issue, the court will review the merits of Martin's motion.

## II.   Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)-(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those

described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an usually long sentence, served at least ten years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders predating amendment 814 of Section 1B1.13. *E.g.*, *United States v. Shields*, 3:07-CR-30106-01, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). Amendment 814 retained much of the language from the prior version of the Sentencing Commission's policy statement, and our prior cases inform our judgement to the extent they are consistent with the current version of the policy statement. *See* U.S.S.G.

§ 1B.13, amend. 814. Previous to Amendment 814, the court assumed that the factors laid out in the Policy Commission's policy statement applied to motions for compassionate release brought by prisoners as well as the Director of the Bureau of Prisons. *See, e.g.*, Muhs, 2021 WL 534517, at *3. Following Amendment 814, the factors courts are to consider now explicitly apply to motions for compassionate release brought by prisoners. See *id.*; U.S.S.G. § 1B.13(a).

Martin argues that his "medical conditions including the ongoing effects of myasthenia gravis, amount to extraordinary and compelling reasons for a reduction in sentence." Docket 656 at 1. The court will not address the other extraordinary and compelling circumstances identified by the Sentencing Commission because Martin does not argue that those circumstances exist.

A.   **Medical Circumstances of the Defendant**

The guidelines identify four situations in which the medical circumstances of the defendant constitute an extraordinary and compelling reason warranting early release. The subcategories of medical circumstances warranting early release are: first, where the defendant has a terminal illness. U.S.S.G. § 1B1.13(b)(1)(A). Second, where the defendant suffers from a serious physical or mental condition that substantially diminishes the defendant's ability to provide self-care within the correctional facility. U.S.S.G. § 1B1.13(b)(1)(B). Third, where the defendant has a condition that requires long-term or specialized care that is not being provided and without which the defendant's health may seriously deteriorate. U.S.S.G. § 1B1.13(b)(1)(C).

Fourth, where the defendant is in a correctional facility at imminent risk of a public health emergency or outbreak of infectious disease, the defendant is especially at risk, and that risk cannot be adequately and timely mitigated. U.S.S.G. § 1B1.13(b)(1)(D).

### 1. Terminal illness

Terminal illness, or a "serious and advanced illness with an end of life trajectory[,]" is an extraordinary and compelling reason for early release. U.S.S.G. § 1B1.13(b)(1)(A). "A specific prognosis of life expectancy . . . is not required." *Id.* Martin does not allege that any of his health problems are terminal illnesses. *See generally* Dockets 643, 656. Additionally, Martin's medical records support that he is not on an end-of-life trajectory. *See generally* Docket 654. Thus, terminal illness is not an extraordinary and compelling reason justifying Martin's compassionate release.

### 2. Substantially diminished ability to provide self-care.

An extraordinary and compelling reason for early release exists where due to a serious medical condition, cognitive impairment, or aging, the defendant presents with a substantially diminished ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B). Where a defendant can complete the tasks of daily living and provide self-care, courts have found that early release is not appropriate. *See United States v. Korn*, 2020 WL 1808213 at *6 (W.D.N.Y. Apr. 9, 2020) (noting that because defendant was "able to walk with a cane, dress, bathe, eat, and perform . . . activities of daily living independently[,]" his medical condition did not

substantially diminish his ability to provide self-care); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019) (denying motion for compassionate release because defendant was capable of independently completing activities of daily living).

     Martin states "[h]e is significantly limited in his capabilities, requiring a cane or walker. When symptoms are bad, he cannot tie his own shoes or tend to his bathroom hygiene." Docket 656 at 11. In November 2023, a flare in his condition caused him to be unable to elevate his arms, be unable to swallow food, experience difficulties breathing, have drooping of his eyelids, and have difficulties focusing his vision. *Id.* at 11-12 (quoting Docket 654 at 148). Martin states "[s]ignificant lifestyle accommodations need to be made to cope with the physical limitations that result from" myasthenia gravis. Docket 656 at 10. Martin believes many of the accommodation recommended by the Mayo Clinic to cope with myasthenia gravis "are difficult to manage or provide in a prison setting, where safety precautions, access to powered toothbrushes and other tools, and dietary needs are difficult, if not impossible, to obtain or meet." Id. (citing Myasthenia gravis, Mayo Clinic (June 22, 2023), https://www.mayo clinic.org/diseases-onditions/myasthenia-gravis/symptomscauses/syc-20352036).

     Aside from requiring a cane or walker, Martin does not state how he is significantly limited in his capabilities to provide self-care. Martin's medical records do not support his claim that when his symptoms are bad, he cannot provide self-care. Docket 656 at 11; *see* Dockets 644, 654. Martin's reliance on

8

a cane and 4-wheel walker does not demonstrate that he is unable to provide self-care. To the contrary, these assistive devices demonstrate that Martin is able to act independently. *See Korn*, 2020 WL 1808213 at *6. Thus, no extraordinary and compelling reason for compassionate release exists on the ground that Martin is impaired in his ability to care for himself while in prison.

### 3. Long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration or death

Under the previous version of the guidelines, there existed no defined subcategory of medical circumstances justifying compassionate release for situations where necessary medical care is not being provided while incarcerated. The updated guidelines define as an extraordinary and compelling reason circumstances where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C), amend. 814.

The record supports that Martin's medical conditions are being appropriately managed at FCI Victorville Medium II. *See* Dockets 644, 654. While in BOP's custody, Martin's prescriptions have been monitored and altered as necessary to meet his treatment needs. Martin has been prescribed Pyridostigmine for his myasthenia gravis, Atorvastatin for hyperlipidemia, Albuterol inhaler for asthma, and Propranolol for hypertension. Docket 654 at 7, 152, 200, 228. Martin receives regular counseling about access to care, plan

9

of care, diet, exercise, weight loss, compliance with treatment, hygiene, and other issues. *Id.* at 142, 145, 149, 151, 154, 170, 173, 182, 200, 217-18.

Although Martin suffers from myasthenia gravis, he is receiving proper medical care while in prison. *See United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (quotation omitted) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."). While not unsympathetic, the finds that Martin's medical conditions are properly managed; therefore, it does not constitute an extraordinary or compelling reason for compassionate release.

### 4. Ongoing outbreak of infectious disease or public health emergency where the defendant is especially at risk and the risk cannot be adequately mitigated

Under the amended sentencing guidelines, an extraordinary and compelling reason for compassionate release exists where (1) the defendant is housed at a correctional facility at imminent risk of an ongoing outbreak of infectious disease or public health emergency, (2) the defendant is especially at risk, and (3) such risk cannot be adequately mitigated in a timely manner. U.S.S.G. § 1B1.13(b)(1)(D).

At this point, the risk of an imminent outbreak of COVID-19 at FCI Victorville Medium II has lessened as compared to the early days of the COVID-19 pandemic. As of February 26, 2024, the BOP reported no open cases of COVID-19 at FCI Victorville Medium II. *See Inmate COVID-19 Data*, Fed. Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_ inmate_covid19.jsp (last accessed Mar. 20, 2024). The federal government has declared an end to the Federal COVID-19 Public Health Emergency. *End of the*

10

*Federal COVID-19 Public Health Emergency*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html (last updated Sept. 12, 2023). The court recognizes that seasonal elevations of COVID-19 infection over the winter months are occurring across the United States and are likely impacting correctional institutions such as FCI Victorville Medium II. *See CDC Continues to Track the Growth of JN.1*. Ctrs, for Disease Control & Prevention, https://www.cdc.gov/respiratory-viruses/whats-new/JN.1-update-2023-12-22.html (last updated Dec. 22, 2023). But the court does not find that this seasonal elevation in COVID-19 infections qualifies as an imminent risk of an ongoing outbreak of infectious disease or public health emergency.

Even if Martin was housed where there was an imminent risk of outbreak or public health emergency, Martin is not at a particular risk for severe complications from COVID-19 or another public health emergency. When considering compassionate release motions in the context of the COVID-19 pandemic, courts have required an inmate to show both a "particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Freeman*, 2021 WL 1758966, at *3 (D. Minn. May 4, 2021), *aff'd*, 2021 WL 5365239 (8th Cir. May 19, 2021) (citations omitted). Martin failed to show a particularized susceptibility to the disease or a particularized risk of contracting the disease at his prison facility, particularly in light of his refusal to be vaccinated and his history of having COVID-19. Docket 63 at 9, 29.

11

The court finds that Martin is not suffering from a terminal illness, his medical problems do not substantially diminish his ability to provide self-care, FCI Victorville Medium II is providing Martin with necessary medical care, and COVID-19 does not present a risk to Martin that cannot be adequately and timely mitigated. Considering the above, the court finds that Martin's medical circumstances do not clear the high bar necessary to warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. Sentencing Factors of § 3553(a)

The § 3553(a) sentencing factors confirm that compassionate release is not warranted. The first factor the court considers is "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). Martin was involved in a conspiracy to distribute large quantities of methamphetamine (meth). *See* Docket 455 at 3-7. Martin was the leader or organizer of the criminal enterprise, which involved multiple other individuals and exceeded a distribution of five kilograms. *Id.* at 7-8. The conspiracy involved the sale and exchange of firearms for meth. *Id.* The large scale of this conspiracy weighs heavily against release.

Martin's personal characteristics neither weigh in favor nor against his release. Martin's inmate discipline data does not reflect any disciplinary record while incarcerated with the BOP. Docket 654 at 327. Martin's criminal history score was 11, reflecting multiple arrests from 1991 to the present. Docket 455 at 9-15. Martin's prior felony convictions included transporting or selling controlled substances, possession of cocaine base for sale, infliction of corporal

12

injury on a spouse/cohabitant, evading a peace officer, possession of marijuana for sale, and possession of a bad check or money order. *Id.* Martin has unlawfully possessed firearms on multiple occasions. *Id.* at 9-10, 14. He was involved in numerous violations, absconding, and probation and parole revocations. *Id.* at 10-11, 13. Martin has no history of mental health evaluation, treatment, or suicide attempts, he is not currently taking medication for mental health symptoms, and he does not feel he has any mental health problems at this time. *Id.* at 20. Martin has a history of drug and alcohol use, beginning at a young age. *Id.* at 20. Because Martin has an extensive criminal history but has behaved well while in prison, the court concludes that Martin's personal characteristics neither weigh in favor or against release.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18. U.S.C. § 3553(a)(2)(A). Martin's extensive criminal history and the seriousness of this offense outweighs the favorable aspects of Martin's background. Granting compassionate release would not promote respect for the law or provide just punishment. Martin was involved in a large methamphetamine distribution conspiracy. *See* Docket 135 at 3-7. The court's interest in just punishment demands that Martin's sentence reflect the gravity of his offense.

The remaining § 3553(a) factors also do not support a sentence reduction. If the court were to grant compassionate release, similar conduct in

13

others would not be deterred because Martin's punishment would not be severe enough to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B).

Martin's efforts at rehabilitation are laudable, but he committed a serious crime. Reducing his sentence at this time would not protect the public from further crimes if Martin resumed his criminal enterprise. *See* 18 U.S.C. § 3553(a)(2)(C). The court finds that the § 3553(a) factors weigh against Martin.

After careful consideration, the court concludes that Martin's sentence of 280 months in custody continues to be appropriate for the seriousness of the crime he committed.

## CONCLUSION

Martin failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for relief under the FSA (Docket 643) is denied.

Dated March 25, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE